1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIM CARTER BYNUM,

Plaintiff,

v.

M. K. SWEET, et al.,

Defendants.

Case No. 21-cv-05833 BLF (PR)

**ORDER GRANTING DEFENDANT SWEET'S MOTION TO DISMISS; GRANTING DEFENDANT LAUFIK'S MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO DISMISS AND DISCOVERY MOTIONS AS MOOT**

(Docket Nos. 13, 30, 33, 40, 42, 43)

Plaintiff, a California inmate, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against medical personnel at the Correctional Training Facility in Soledad ("CTF"). Dkt. No. 1. The Court found the complaint stated a cognizable claim for deliberate indifference to serious medical needs against Defendant Dr. Mary K. Sweet and exercised supplemental jurisdiction over a negligence claim against Defendant Dr. Martin Laufik. Dkt. No. 9.

Defendant Sweet filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim for relief based on his pleading and supporting papers and that she is entitled to qualified immunity. Dkt. No. 13. Plaintiff filed opposition, Dkt. No. 17, and Defendant Sweet filed a reply, Dkt.

1    No. 19.

2          Defendant Laufik filed a separate motion to dismiss for failure to state a claim for

3    relief.  Dkt. No. 33.  While this motion was still pending, Defendant Laufik filed a motion

4    for summary judgment on the grounds that there is no dispute of material fact and he is

5    entitled to judgment as a matter of law.  Dkt. No. 42.  Plaintiff filed opposition, Dkt. No.

6    45, and Defendant filed a reply, Dkt. No. 48.

7          The Court will first discuss Defendant Sweet's motion to dismiss and then

8    Defendant Laufik's summary judgment motion.

9          For the reasons set forth below, Defendant Sweet's motion to dismiss is

10   GRANTED, and Defendant Laufik's motion for summary judgment is GRANTED.

11   Defendant Laufik's motion to dismiss is DENIED as moot.

12

13                                    **DISCUSSION**

14   **I.    Plaintiff's Claims**

15         The following are the allegations set forth in Plaintiff's complaint and information

16   from the medical records attached thereto as exhibits on which he relies.

17         Plaintiff claims that on or about January 31, 2020, he fell and injured his elbow

18   while exiting the shower. Dkt. No. 1 at ¶ 1. On February 3, 2020, he complained about

19   pain in his arm at the medical clinic, where he was instructed to put in a health care

20   services request.  *Id.* at ¶ 2.  He did so on February 6, 2020, complaining of pain in his arm

21   and shoulder.  *Id.* at ¶ 3, Ex. A.[1]  He filed subsequent requests on February 7 and 18, 2020,

22   complaining of severe pain in his right arm.  *Id.* at ¶¶ 4, 5, Exs. B, C.

23         On February 25, 2020, Plaintiff was examined by Dr. Chen, his primary care

24   physician (PCP).  *Id.* at ¶ 6, Ex. D.  Plaintiff complained of "increasing pain to right arm

25   and right shoulder."  *Id.*  According to the progress notes, Plaintiff informed her that based

26

27   ──────────────
     [1] All references to exhibits are to the exhibits attached to Plaintiff's complaint, Dkt. No. 1,
     until otherwise noted.  *See infra* at 20, fn. 4.

28                                          2

on his own research, he believed he had suffered a "torn distal biceps tendon"; it appears Dr. Chen tentatively agreed.  Ex. D, Dkt. No. 1-1 at 8.  Dr. Chen indicated that since the acute injury had likely occurred over three weeks ago, the injury "may not respond as nicely to surgical correction."  *Id.* at 9.  Dr. Chen's plan was to order an ultrasound of the right upper extremity ("RUE") to verify the injury, request an orthopedic surgery consult, which if approved "needs appt relatively quickly," order radiology, and have Plaintiff take ibuprofen for pain management.  *Id.*; Ex. E.  The request for orthopedic surgery was entered as "routine priority (46-90 days)."  Ex. E, Dkt. No. 1-1 at 11.

On February 26, 2020, Defendant Dr. Sweet, as the physician manager, denied the request for orthopedic evaluation based on the following: "Have not done conservative treatment of condition, such as rest, NSAIDs, and later PT. Condition not requiring surgery as functional loss not significant impairment (up to 25% only) of ADL per literature review/up to date review."  *Id.* at ¶ 8, Ex. F.

On February 27, 2020, Defendant Sweet approved the request for an ultrasound.  *Id.* at ¶ 9, Ex. G.  The order noted, "Please do ASAP as potential surgical correction is time-sensitive."  *Id.*  On March 12, 2020, the result of the ultrasound was inconclusive due to a hematoma blocking the view; Dr. Chen noted that she would request an MRI.  *Id.* at ¶ 10, Ex. H.

On March 18, 2020, Dr. Chen made a request for an MRI of Plaintiff's elbow, which was approved by Defendant Sweet on March 19, 2020.  *Id.* at ¶ 11, Ex. I.  On March 20, 2020, the MRI was done and evaluated by Defendant Dr. M. Laufik.  *Id.* at ¶ 12.  Defendant Laufik concluded that there was "[n]o significant abnormality."  Ex. I, Dkt. No. 1-1 at 21.  This conclusion was based on the following observations: "There is no acute fracture or dislocation.  No significant arthropathy.  No significant chondromalacia.  The visualized ligament and tendons are intact….  No significant joint effusion.  No significant soft tissue edema, mass or collection identified."  *Id.*

On April 2, 2020, Plaintiff was informed by a letter from Dr. Chen that visualized

ligaments and tendons were all normal and no provider follow-up was required.  *Id.* at ¶ 14, Ex. L.

Meanwhile, on March 30, 2020, Plaintiff submitted another health care request complaining of extreme pain in his right arm.  Dkt. No. 1 at ¶ 13, Ex. K.  He submitted another health care request with the same complaint on April 7, 2020, after Dr. Chen informed him of the MRI results.[2]  *Id.* at ¶ 15, Ex. M.

On April 15, 2020, Plaintiff submitted another health care request complaining of pain in his right arm.  Dkt. No. 1 at ¶ 17, Ex. O.  On April 17, 2020, Plaintiff saw Dr. Chen, whom he alleges informed him that her "hands were tied" regarding Plaintiff's distal arm injury "due to upper management inaction."  *Id.* at ¶ 18.  She stated she would submit another request for orthopedic evaluation.  *Id.*  She did so on April 20, 2020, which was approved by Dr. Posson.  *Id.* at ¶ 19, Ex. P.  The request was submitted as "routine priority (46-90) days."  Ex. P, Dkt. No. 1-1 at 41.

On April 21, 2020, Plaintiff submitted another health care request complaining of severe pain in his arm.  *Id.* at ¶ 20, Ex. Q.  On the same day, Dr. Chen submitted a request for an MRI of his right shoulder, which was approved by Dr. Posson the following day.  *Id.* at ¶ 21, Ex. R.

On April 29, 2020, Plaintiff submitted a health care request complaining of pain in his biceps and cramping in the forearm of his right arm.  *Id.* at ¶ 22, Ex. S.  Two days later on May 1, 2020, he had an "in[-]person clinic appointment" that resulted in a patient discharge information."  *Id.* at ¶ 23, Ex. T.  He was provided with educational document

---

[2] Also on April 7, 2020, Plaintiff submitted a medical grievance, asserting that the prison was providing inadequate medical care and preventing him from seeing a specialist.  *Id.* at ¶ 16, Ex. N; Dkt. No. 1-1 at 33-34.  Plaintiff provided a copy of the institutional level response by Chief Medical Executive ("CME") Dr. Posson to the complaint.  Ex. N, Dkt. No. 1-1 at 29-30.  Dr. Posson summarized the treatment for Plaintiff's injury and concluded he had received continuing and appropriate care.  *Id.*  The headquarters' level response also found Plaintiff received appropriate treatment for his injury, and that his disagreement "with the decision of [his] treatment team, does not constitute staff misconduct or deliberate indifference to your health care needs."  *Id.* at 31-32.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

entitled "Biceps Tendon Disruption (Distal) With Rehab," which discussed distal biceps tendon symptoms, causes, and treatment options. *Id.*, Dkt. No. 1-1 at 50-51.

Also on May 1, 2020, the MRI was completed by Defendant Laufik, who found "partial rotator cuff tearing." *Id.* at ¶ 24, Ex. U. The results also showed "[n]o acute fracture," in-place and intact long-head biceps, intact labrum, and no significant muscle atrophy (diminution). Ex. U, Dkt. No. 1-1 at 53. The results also showed mild to moderate acromioclavicular joint disease. *Id.*

On May 4, 2020, Dr. Chen submitted a request for an orthopedic surgery evaluation based on the MRI, which was approved by a non-party. Dkt. No. 1 at ¶ 25, Ex. V. The request was again submitted as "routine priority (46-90) days." Ex. V, Dkt. No. 1-1 at 55.

During May and June 2020, Plaintiff submitted numerous health care requests complaining of severe pain, bicep disfigurement, and cramping in his right arm. *Id.* at ¶¶ 26, 27, 28, 29, 30, 31, 32, Exs. W, X, Y, Z, AA, BB, CC. He filed another request on July 15, 2020. *Id.* at ¶ 33, Ex. DD.

On July 29, 2020, Plaintiff saw orthopedic surgeon Dr. Kowall via telemedicine. *Id.* at ¶ 34, Ex. EE. Dr. Kowall noted that Plaintiff had full active range of motion in his right shoulder and elbow. Ex. EE, Dkt. No. 1-1 at 74. Dr. Kowall found that Plaintiff's clinical exam was consistent with a "distal biceps tendon avulsion," i.e., pulling or tearing. *Id.* at 75. Dr. Kowall discussed treatment options with Plaintiff, including both conservative and operative treatment. *Id.* Dr. Kowall's recommendation was reconstructive surgery with allograph tissue to remedy the pain and regain strength. *Id.*

On July 31, 2020, Dr. Chen submitted a request for orthopedic surgery repair tendon extremity, which was approved by Defendant Sweet on the same day. Dkt. No. 1 at ¶ 35, Ex. FF. The surgery took place on August 3, 2020. *Id.* According to the progress notes from a subsequent follow-up, the surgery "went very well, without any apparent complications." Ex. GG, Dkt. No. 1-1 at 79.

On August 19, 2020, Plaintiff had an in-person post-surgical medical evaluation

5

with Dr. Kowall.  Ex. HH, Dkt. No. 1-1 at 81.  The exam showed the surgical incision was healing well, the allograft tendon was intact, and Plaintiff had good range of motion.  *Id.*

Based on his allegations, Plaintiff claims that Defendant Sweet acted with deliberate indifference when she denied Dr. Chen's first request for an orthopedic evaluation on February 27, 2020, based on her reasoning: "injury does not require surgery, functional loss is minimal." *Id.* at ¶¶ 40-42.  Plaintiff claims that Defendant Sweet's chosen course of treatment was unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to his health.  *Id.* at ¶ 43.  Plaintiff claims Dr. Kowall stated that primary repair was not possible due to the time interval between injury and seeing him, and that chronic cramping and weakness is common.  *Id.* at ¶ 44.  Plaintiff claims Defendant Sweet is liable for delaying access to a specialist, which was the proximate cause of further pain and irreparable injury.  *Id.*

## II.    Motion to Dismiss

Failure to state a claim is grounds for dismissal under Rule 12(b)(6).  Dismissal for failure to state a claim is a ruling on a question of law.  *See Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995).  "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) (citations omitted).  A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570.  To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  From these decisions, the following "two principles" arise: "First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Review is limited to the contents of the complaint, *see Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested.  *See Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  In addition, the court may take judicial notice of facts that are not subject to reasonable dispute.  *See id*. at 688 (discussing Fed. R. Evid. 201(b)).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party.  *See Symington*, 51 F.3d at 1484.

On the other hand, a plaintiff may plead himself out of a claim by including unnecessary details contrary to his claims.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court, for example, is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.  *Atlantic Corp.*, 550 U.S. at 555; *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  After all, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  A court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg*, 18 F.3d at 754-55.

///

United States District Court
Northern District of California

7

United States District Court
Northern District of California

### A.   <u>Deliberate Indifference to Serious Medical Needs</u>

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

With regard to the first prong, a "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id*.  With regard to the second prong, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Id.* at 837.  The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference.  *Id*.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, *see Toguchi v. Chung*, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.

United States District Court
Northern District of California

1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

Defendant argues that Plaintiff fails to state a claim for deliberate indifference to serious medical needs against Defendant Sweet because: (1) a difference of medical opinion between Defendant Sweet and the PCP regarding the course of treatment does not amount to deliberate indifference; (2) the medical records attached to the complaint show that Plaintiff cannot prove that Defendant Sweet possessed a "sufficiently culpable state of mind"; and (3) the delay in Plaintiff's examination by an orthopedic surgeon does not objectively amount to an Eighth Amendment violation. Dkt. No. 13 at 10.

With regard to the first argument, Defendant asserts that the medical records provided with the complaint shows that Defendant Sweet disagreed with Dr. Chen's first request for an orthopedic evaluation because she believed that Plaintiff should explore a non-operative treatment first, before referring him for an evaluation for orthopedic surgery. *Id.* at 12, citing Dkt. No. 1-1 at 13. To that end, Defendant Sweet approved the requests for an ultrasound and MRIs for Plaintiff's RUE soft tissues. *Id.*, citing Dkt. No. 1-1 at 13, 15, 19. Defendant asserts that moreover, Defendant Sweet did not believe that there was any emergent need to refer Plaintiff for an orthopedic surgery evaluation because her review of his medical records showed that his functional loss was not a significant impairment of his activities of daily living. *Id.*, citing Dkt. No. 1-1 at 13. The subsequent MRI on March 20, 2020, confirmed Defendant Sweet's medical opinion about the proper course of treatment for Plaintiff's injury. *Id.*, citing Dkt. No. 1-1 at 13, 21, 14. The MRI showed that his elbow, ligaments, and tendons were all normal, and that surgery was not needed, which appeared to validate Defendant Sweet's recommendation to postpone

9

surgical intervention.  *Id.*  Defendant concludes that she is entitled to dismissal because the difference of medical opinion does not amount to deliberate indifference.  *Id.*

With regard to her second argument, Defendant asserts that the medical records attached to the complaint show that Defendant Sweet responded promptly to each of Dr. Chen's requests for services.  Dkt. No. 13 at 13.  Although Defendant Sweet denied the February 25, 2020 request for an orthopedic surgical evaluation, she granted the requests for an ultrasound, an MRI, and orthopedic surgery.  *Id.*  Defendant asserts that the first denial for an evaluation does not evidence that Defendant Sweet sought to intentionally deny Plaintiff's treatment, but rather that she continued to diagnose and treat his condition in what she believed was an appropriate manner.  *Id.*  Defendant asserts, therefore, that Plaintiff cannot satisfy the subjective component of his deliberate indifference claim against Defendant Sweet.  *Id.* at 14.

Lastly, with respect to her third argument, Defendant Sweet asserts that when an inmate alleges delay in receiving medical treatment, he cannot state a deliberate indifference claim unless the delay led to further injury or harm.  *Id.*  A "serious medical need" is one where the failure to treat the medical condition could result in "further significant injury or the unnecessary and wanton infliction of pain."  *Id.*  Defendant asserts that Plaintiff cannot meet this objective threshold because the medical records show that his symptoms and conditions were not so serous as to require immediate surgical intervention by an orthopedic surgeon when the request was first made.  *Id.*, citing Dkt. No. 1-1 at 8-11.  Defendant Sweet's review of Plaintiff's records on February 27, 2020, showed that his functional loss was not a significant impairment of his activities of daily living.  *Id.* at 15, citing Dkt. No. 1-1 at 13.  Furthermore, Dr. Chen's assessment of Plaintiff's injury two days earlier showed that Plaintiff did not require immediate surgical intervention as she categorized the request as merely "routine."  *Id.*  Defendant also asserts that the medical records indicate that the denial of an orthopedic evaluation on February 27, 2020, did not cause Plaintiff substantial harm because he eventually underwent a

successful surgery.  *Id.*

In opposition, Plaintiff asserts that his medical records show "rampant professional negligence," and that Defendant Sweet's denial and the surgery were "a painful and irreparable costly journey, that rose to a constitutional deprivation actionable under § 1983." Dkt. No. 17 at 11.  First, Plaintiff asserts that contrary to Defendant's characterization, Dr. Chen had expressed the "urgency" of his condition because she noted the following in the ultrasound request: "Please do ASAP as potential surgical correction is time sensitive." Dkt. No. 17 at 8, citing Ex. G.  Plaintiff asserts that Defendant Sweet's denial of the request on February 27, 2020 was therefore "decided recklessly." *Id.* Plaintiff argues that Defendant Sweet was put on notice of his serious medical injury by Dr. Chen's first order for an orthopedic evaluation. *Id.* at 14.  He also asserts that the medical records demonstrate Defendant Sweet's culpable state of mind, i.e., "when she gave her physician manager authoritative reason" for denying Dr. Chen's request. *Id.*

Furthermore, Plaintiff asserts that Defendant Sweet's chosen course of treatment was medically unacceptable under the circumstances, and that she chose this course in conscious disregard of an excessive risk to his health. *Id.* at 15.  In this respect, he asserts that the first part of her stated reason, "[h]ave not done conservative treatment of condition, such as rest, NSAIDs, and later PT," means "essentially to do nothing but take pain relievers and later do physical therapy." *Id.* at 17.  Plaintiff also alleges that the second half of Defendant Sweet's reasoning, "[c]ondition not requiring surgery as functional loss not significant impairment (up to 25% only) of ADL," indicates "her acknowledgment of the apparent risk of inaction and her blatant disregard for the resulting functional loss and ultimate maiming of plaintiff as a[n] acceptable result of inaction." *Id.* He asserts that Defendant Sweet "did not appreciate that there was an emergency need." *Id.* at 15.  Plaintiff asserts that Defendant Laufik's interpretation of the MRI on March 20, 2020, was inaccurate, and that furthermore, since this MRI was performed 23 days after she denied the request, it could not have had any bearing on Defendant Sweet's decision to

deny the referral. *Id.* at 16. Lastly, Plaintiff asserts that the resulting delay in getting a consult resulted in "irreparable damage and prolonged pain and suffering." *Id.* at 14.

In reply, Defendant asserts that the complaint and its attachments do not support Plaintiff's assertions that Defendant Sweet provided "medically unacceptable" and "cursory" treatment, or that she delayed his surgery by five months. Dkt. No. 19 at 1. Defendant asserts that Plaintiff does not explain why Defendant Sweet's recommendations to treat his injury with non-operative procedures, NSAIDs, and physical therapy was medically unacceptable, and that he does not profess to have the training, education, or experience to make such an assessment. *Id.* at 2. Defendant asserts that neither the complaint nor the attached medical records sets forth facts from which one could plausibly infer that Defendant Sweet acted with a "sufficiently culpable state of mind" to establish deliberate indifference. *Id.* at 3. Lastly, Defendant asserts that the medical records do not show that Defendant Sweet's denial caused a five-month delay in surgery because there was no emergent need at the time she denied the first request for a referral, and that any delay that her decision caused was only for a little more than a month as it was later granted. *Id.* at 4.

After carefully reviewing the complaint, the supporting documents, and the pleadings, the Court finds Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendant Sweet. In support of his claim, Plaintiff has relied on copies of relevant portions of his medical record, the authenticity of which is not contested. *See Lee*, 250 F.3d at 688. In relying on these documents, Plaintiff has included unnecessary details which contradict his claim because the documents contain information which do not support his allegations. *Sprewell*, 266 F.3d at 988. As a result, Plaintiff has made legal conclusions which cannot reasonably be drawn from the facts alleged. *Clegg*, 18 F.3d at 754-55.

First of all, the medical records attached to the complaint contradict Plaintiff's allegation that his condition was "urgent" such that Defendant Sweet should have

1  immediately approved the referral for a surgery consultation in accordance with his PCP's

2  orders.  Rather, the papers show that by the time Plaintiff was first seen by Dr. Chen on

3  February 25, 2020, over three weeks had passed since he had allegedly injured his right

4  arm on January 31, 2020.  *See supra* at 2.  Dr. Chen opined that since such a length of time

5  had passed, the injury "may not respond as nicely to surgical correction."  *Id.* at 3.  But the

6  fact that Dr. Chen was willing to submit a request for an orthopedic surgery consult at that

7  time does not establish that it was her only course of treatment for Plaintiff.  Rather, the

8  same papers show that Dr. Chen also ordered diagnostic testing, i.e., the ultrasound and

9  radiology, to "verify" the injury, which indicates another course of treatment.  *Id.*

10  Moreover, she made the request for an orthopedic surgery evaluation as "routine priority

11  (46-90 days)," not "urgent" as Plaintiff alleges.  *Id.*  Accordingly, Plaintiff's allegation that

12  Defendant Sweet ignored a "serious and time sensitive injury" in denying the referral on

13  February 27, 2020, is contradicted by the record.

14          Secondly, the papers do not support Plaintiff's allegation that when Defendant

15  Sweet denied the initial request for an orthopedic referral, she did so with deliberate

16  indifference to his serious medical needs, the second requirement for an Eighth

17  Amendment claim.  Specifically, the papers do not support a claim that Defendant Sweet

18  knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by

19  failing to take reasonable steps to abate it.  *See Farmer*, 511 U.S. at 837.  Defendant Sweet

20  must both know of facts from which the inference could be drawn that an excessive risk of

21  harm exists, and she must actually draw that inference.  *Id.*  The medical records on which

22  Plaintiff relies do not support such a claim.  Defendant Sweet clearly stated her reasons for

23  denying the request: (1) she believed that conservative treatment should first be exhausted,

24  and (2) she did not believe that Plaintiff's condition required surgery because his

25  functional loss did not amount to significant impairment.  *See supra* at 3.  The first reason

26  indicates that she believed Plaintiff still had other treatment options open to him, which is

27  consistent with her decision to grant Dr. Chen's other requests.  The second reason

28

indicates Defendant Sweet did not believe Plaintiff's condition was so serious as to warrant surgery.  In sum, her explanation shows that Defendant Sweet was not aware of "facts from which the inference could be drawn" that there was an excessive risk of harm to Plaintiff if she did not grant the referral for a surgical evaluation at that time.  In opposition, Plaintiff merely makes conclusory arguments which fail to show that Defendant Sweet's decision was unreasonable under the circumstances.  *See supra* at 11.  Moreover, Plaintiff asserts in opposition that Defendant Sweet "did not appreciate that there was an emergency need." *Id.*  In other words, Plaintiff admits that Defendant Sweet did not understand or recognize that his condition was an emergency.  Even if Defendant Sweet should have been aware of a serious risk but was not, as Plaintiff indicates, then Defendant Sweet has not violated the Eighth Amendment, no matter how severe the risk. *See Gibson*, 290 F.3d at 1188.

In addition, the medical records on which Plaintiff relies do not indicate that Defendant Sweet deliberately chose to do nothing.  These papers show that Defendant Sweet took reasonable steps to abate any existing risk to Plaintiff, *i.e.*, approving Dr. Chen's requests for an ultrasound and then an MRI, as alternatives to an immediate referral for surgery consult. *See supra* at 3.  She also promptly granted these requests within a day or two of them being made. *Id.*  Accordingly, her actions in this regard do not indicate that Defendant Sweet disregarded a known risk of serious harm to Plaintiff and failed to take reasonable steps to abate it.

With regard to Plaintiff's claim that Defendant Sweet's chosen course of treatment was medically unacceptable under the circumstances, that claim is also contradicted by the attached papers.  First, Defendant Sweet's approval of Dr. Chen's requests for diagnostic tests show that she was not in complete disagreement with Dr. Chen's chosen course of treatment.  Secondly, even if it were true that Dr. Chen also chose surgery as a course of treatment when she first examined Plaintiff on February 25, 2020, the papers indicate that her treatment plan changed after Plaintiff's first MRI on March 20, 2020, showed "[n]o

14

significant abnormality." *See supra* at 3.  Dr. Chen informed Plaintiff on April 7, 2020, that the visualized ligaments and tendons were all normal and that no provider follow-up was required.  *See supra* at 3-4.  Dr. Chen made no mention of a need for surgical consult. Therefore, it can be inferred that she no longer believed that surgery was medically necessary.  Accordingly, the papers do not support Plaintiff's allegation that Defendant Sweet's chosen course of treatment, i.e., to initially deny orthopedic consult and proceed with diagnostic tests to verify injury, was unreasonable where even his PCP changed the course of treatment after diagnostic tests showed normal results.

Lastly, the medical records contradict Plaintiff's allegation that Defendant Sweet was responsible for the five-month delay in seeing a specialist which resulted in further pain and irreparable injury.  As discussed above, Plaintiff's MRI results on March 20, 2020, were normal.  Accordingly, the medical records contradict Plaintiff's allegation that Defendant Sweet's denial of the referral on February 27, 2020, resulted in further harm because an MRI of his arm nearly a month later showed no abnormalities.  *See McGuckin*, 974 F.2d at 1060.  Plaintiff next saw Dr. Chen on April 17, 2020, when he continued to complain of pain in his right arm even after the normal MRI results.  *Id.* at 4.  Even if it were true that she advised Plaintiff that her hands were "tied," Dr. Chen nevertheless was able to submit another referral for an orthopedic evaluation, which was granted by Dr. Posson on April 20, 2020.  *Id.*  That request was again submitted as "routine priority (46-90 days)."  *Id.*  There is no indication in the papers, nor does Plaintiff allege, that Defendant Sweet was involved in Plaintiff's treatment at this time.  While this referral was pending, Dr. Chen submitted a request for another MRI on April 21, 2020, approximately a month after the first normal MRI, because Plaintiff continued to complain of severe pain. *Id.*  Because this second MRI showed a "partial rotator cuff tearing," Dr. Chen submitted another request for an orthopedic surgery evaluation on May 4, 2020, which was approved by a non-party.  *Id.*  That request was also submitted as "routine priority (46-90 days)."  *Id.* In accordance with this timeframe, which required a date between June 19, 2020 and

United States District Court
Northern District of California

August 2, 2020, Plaintiff saw Dr. Kowall on July 29, 2020.  *Id.*  Again, there is no indication in the papers, nor does Plaintiff allege, that Defendant Sweet was involved in Plaintiff's treatment during this time.  Moreover, after Dr. Kowall's consult on July 29, 2020, Defendant Sweet promptly granted Dr. Chen's request for orthopedic surgery repair on the same day it was submitted.  *See supra* at 5.  Her prompt action does not indicate deliberate indifference or an intent to delay necessary treatment for a serious condition. Accordingly, the medical records contradict Plaintiff's allegations that Defendant Sweet's initial denial on February 27, 2020, caused him further pain and irreparable injury or that she was responsible for the delay in seeing a specialist over the subsequent months until his surgery on August 3, 2020.

Based on the foregoing, the Court finds that the complaint fails to state a claim of deliberate indifference to serious medical needs against Defendant Sweet because the attached papers contradict Plaintiff's claim.  *See Sprewell*, 266 F.3d at 988; *Clegg*, 18 F.3d at 754-55.  Accordingly, Defendant Sweet's motion to dismiss the Eighth Amendment claim for failure to state a claim should be granted.  Because the facts have been construed in the light most favorable to Plaintiff and he has made no argument that an amendment could cure these deficiencies, nor does it appear that he could do so, the dismissal is without leave to amend.[3]

## IV.  Summary Judgment

Plaintiff claims Defendant Laufik was "professionally negligent" because his diagnosis of Plaintiff's right elbow tendon as "normal" was a "breach of duty as a professional of the healing arts."  Dkt. No. 1 at ¶¶ 46-47.  Plaintiff claims that months after Defendant Laufik's diagnosis, Dr. Kowall diagnosed a "distal bicep tendon rupture" which required urgent surgery.  *Id.* at ¶ 47.  He claims Defendant Laufik's misdiagnosis extended the time interval between his injury and seeing an orthopedic specialist, which created

---

[3] Because the Court finds Plaintiff has failed to state an Eighth Amendment claim, there is no need to reach Defendant's qualified immunity argument.

United States District Court
Northern District of California

irreparable damage and needless pain and suffering.  *Id.*  This is essentially a claim of medical malpractice.  Plaintiff also generally claims that Defendant Laufik's actions violated his rights and constitutes cruel and unusual punishment under the Eighth Amendment.  *Id.* at ¶ 47.  The Court exercised supplemental jurisdiction over the state law claim.  Dkt. No. 9 at 2.  Although the Court did not recognize a cognizable deliberate indifference claim against Defendant Laufik in its initial screening order, the Court will decide this issue as well since the claim has been briefed.

Defendant Laufik moves for summary judgment on the grounds that there is no dispute of material fact and he entitled to judgment as a matter of law.  Dkt. No. 42 at 1.  In support, he submits the declaration of counsel Patrick C. Stokes with exhibits, Dkt. No. 42-2, his own declaration with exhibits, Dkt. No. 42-3, and the declaration of Dr. Erik Gaensler with exhibits, Dkt. No. 42-4.

Shortly after Defendant Laufik filed a summary judgment motion, Plaintiff filed a motion to appoint counsel and an independent expert.  Dkt. No. 43.  The Court first addresses Plaintiff's motion below.

## A.      Motion for Appointment of Counsel and Independent Expert

Plaintiff asserts that he is unable to afford counsel, imprisonment greatly limits his ability to litigate, the issues are complex, and he has limited access to the law library and limited knowledge of the law.  *Id.* at 1-2.  There is no constitutional right to counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation. *See Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981); *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (no constitutional right to counsel in § 1983 action), *withdrawn in part on other grounds on reh'g en banc*, 154 F.3d 952 (9th Cir. 1998) (en banc).  The decision to request counsel to represent an indigent litigant under § 1915 is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984).  The grounds set forth for appointment of counsel do not distinguish Plaintiff from other *pro se* prisoners

to constitute exceptional circumstances.  Accordingly, the motion is DENIED without prejudice for lack of exceptional circumstances.  *See Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Rand,* 113 F.3d at 1525 (9th Cir. 1997); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

Plaintiff requests the Court to appoint an independent expert to certify the alleged authenticity of the data CD submitted by Defendant Laufik that contains MRI images, and to "render an opinion to the interpretation of its graphics."  Dkt. No. 43 at 2-3.  Both Defendants oppose the motion.  Dkt. Nos. 44, 47.

Federal Rule of Evidence 706 authorizes the appointment of a neutral expert witness, with expenses shared by the parties.  The appointment of an independent expert witness pursuant to Rule 706 is within the court's discretion, *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999), and may be appropriate when "scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a fact in issue," *Ledford v. Sullivan*, 105 F.3d 354, 358-59 (7th Cir. 1997).  However, the statute authorizing plaintiff's *in forma pauperis* status does not authorize the expenditure of public funds for expert witnesses.  *See* 28 U.S.C. § 1915; *Tedder v. Odel*, 890 F.2d 210, 211-12 (9th Cir. 1989) (expenditure of public funds on behalf of indigent litigant is proper only when authorized by Congress). The federal courts have uniformly held that an indigent prisoner litigant must bear his own costs of litigation, including witnesses.  *Id.* at 211 (*in forma pauperis* statute does not authorize waiver of fees for an indigent's witnesses).

To the extent that Plaintiff is seeking to have the Court appoint an expert witness to aid his case, that request is denied pursuant to the authority cited above because of his *pauper* status.  To the extent Plaintiff is seeking a neutral expert, the Court does not find that the issues in this case are so complicated such that the testimony of a neutral expert is warranted under Rule 706.  Neither Plaintiff's medical condition nor the legal issues

18

involved are overly complex.  Accordingly, the motion for an independent expert is DENIED.  Dkt. No. 43.

The Court notes that notwithstanding the absence of counsel or an independent expert, Plaintiff filed opposition to Defendant Laufik's summary judgment motion.  Dkt. No. 45.  The Court will therefore proceed with Defendant's summary judgment motion.

**B.**   **Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by

19

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.*  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### C.   <u>Statement of Facts</u>

The following facts are undisputed unless otherwise indicated.

At the time of the relevant events, Defendant Laufik was actively licensed to practice medicine as a physician and surgeon in the State of California, and board certified in Diagnostic Radiology by the American Board of Radiology.  Laufik Decl. ¶¶ 2-4, Ex. A.[4]  Defendant Laufik is a radiologist, and in this role, his sole involvement in Plaintiff's medical care was to review and report on radiology studies. *Id.* at ¶ 5.

On March 20, 2020, Plaintiff underwent an MRI (magnetic resonance imaging) of the right elbow. *Id.* at ¶ 6, Ex. B; Dkt. No. 1 at ¶ 12.  Defendant Laufik reviewed the

---

[4] All references to exhibits from this point forward are to the exhibits in support of Defendant Laufik's summary judgment motion, unless otherwise noted.

images and found no significant abnormality in the images.  Laufik Decl. ¶ 6.  He prepared a report of his findings the same day.  *Id.*  The MRI images contained no indication that Plaintiff had suffered a right distal biceps tendon rupture.  Laufik Decl. ¶ 7; Gaensler Decl. ¶ 8a.

On May 1, 2020, Plaintiff underwent an MRI of the right shoulder.  Laufik Decl. ¶ 8, Ex. C.  Defendant Laufik reviewed the images and identified significant abnormalities, including partial thickness rotator cuff tear with focal full-thickness or near full thickness component at insertion, findings consistent with impingement, and additional nonemergent findings.  *Id.*  Defendant Laufik prepared a report of his findings the same day the MRI was performed.  *Id*.  This MRI contained no indication that Plaintiff had suffered a right distal biceps tendon rupture.  *Id.* at ¶ 9; Gaensler Decl. ¶ 8b.

On July 29, 2020, orthopedic surgeon Dr. Kowall diagnosed Plaintiff with right distal biceps avulsion.  Dr. Kowall's records indicate that the images from the March 20, 2020 MRI were not available to him, noting "Radiographic Findings: Right elbow ultrasound and MRI not available for review."  Gaensler Decl. ¶ 9.

According to Plaintiff, his PCP diagnosed him with a rupture in his right distal bicep tendon on February 25, 2020, and submitted a request for an orthopedic surgical evaluation.  Dkt. No. 45-1 at ¶ 4.  Plaintiff states that Dr. Kowall informed him at the July 29, 2020 consult, that the previous clinical findings reported by Defendant Laufik were inaccurate and [Plaintiff] suffered an obvious rupture in [his] right distal bicep tendon and needed surgery.  *Id.* at ¶ 29.

### D.    Medical Malpractice

In his summary judgment motion, Defendant asserts that Plaintiff's medical malpractice claim fails because the undisputed material facts establish that Defendant Laufik complied with the standard of care at all times and in all aspects of his care and treatment of Plaintiff.  Dkt. No. 42 at 4.

"[I]n any medical malpractice action, the plaintiff must establish the following: (1)

21

the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly prosses and exercise; (2) breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Hanson v. Grode*, 76 Cal.App.4th 601, 606 (1999) (internal citations and quotation marks omitted).

"The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issues in a malpractice action and can only be proved by their testimony." *Id.* at 606-607 (internal quotations omitted).  California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases, such that when a defendant moves for summary judgment which is supported by expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment "unless the plaintiff comes forward with conflicting expert testimony." *Id.* at 607; *see also Vandi v. Permanente Medical Group, Inc.*, Cal.App.4th 1064, 1071 (1992).

Rule 702 of the Federal Rules of Evidence provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.

In support of his motion, Defendant submits the declaration of Erik Gaensler, M.D., who gives expert testimony regarding whether Defendant Laufik met the standard of care with respect to Plaintiff's MRIs.  Dkt. No. 42-4.  The Court finds this expert opinion is admissible under Rule 702.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant asserts that Plaintiff's allegations against him are based entirely on his personal belief that Defendant Laufik should have diagnosed right distal biceps tendon rupture based on the MRI taken on March 20, 2020.  Dkt. No. 42 at 3.  Defendant asserts that Plaintiff's claims are groundless because those MRI images, as well as the MRIs taken on May 1, 2020, contain no indication that Plaintiff had suffered a right distal biceps tendon rupture.  *Id.*  Defendant asserts his findings are supported by Dr. Gaensler's opinions, which are based on: (1) his education, training, and experience; and (2) his review of the declarations of Mr. Stokes and Defendant Laufik in support of this motion and the exhibits thereto.  *Id.* at 7-8.

In opposition, Plaintiff asserts there are material facts in dispute.  Dkt. No. 45 at 1.  He first asserts that it is "common knowledge that a MRI reveals more detail than a ultra sound."  *Id.* at 12.  Plaintiff asserts that his PCP diagnosed him with a rupture in his right distal bicep tendon and requested an orthopedic surgical evaluation on February 25, 2020.  *Id.*  Dr. Kowall later confirmed this diagnosis and stated Defendant Laufik's reading was inaccurate.  *Id.* at 13.  Accordingly, Plaintiff asserts that it is unlikely that the MRI on March 20, 2020, "would not reveal the source of the March 12, 2020 hematoma which was discovered during the ultra sound."  *Id.*  He concludes that based on the inaccurate information Defendant provided, the urgent treatment he needed to repair the injury to his arm was unnecessarily delayed.  *Id.* at 14.

In reply, Defendant asserts that he is entitled to prevail because Plaintiff has failed to present an expert declaration specifying that Defendant Laufik breached the standard of care.  Dkt. No. 48 at 3.  He asserts that Plaintiff's attempt to manufacture a triable issue by offering his own medical opinion and alleging a disagreement by Dr. Kowall with Defendant Laufik's findings also fails.  *Id.* at 4.  Defendant also objects to the following portions of Plaintiff's declaration: (1) his allegation that Dr. Kowal informed him that Defendant Laufik's findings were inaccurate, Dkt. No. 45-1, ¶ 29, and (2) it is "common knowledge" that MRI reveals more tissue detail than an ultrasound, *id.* at ¶ 35.  *Id.* at 2.

Defendant objects to the first as hearsay under Federal Rule of Evidence 801(c), which is inadmissible under Rule 802, with no exceptions cited under Rules 803, 804, and 807. *Id.* Defendant asserts the second as inadmissible lay opinion under Federal Rule of Evidence 701, which requires specialized knowledge within the scope of Rule 702 and Plaintiff has failed to establish that he is qualified to give such expert opinion. *Id.*

Defendant's first objection to the admission of Dr. Kowall's statement as hearsay must be sustained. It is clearly hearsay because Plaintiff's recitation of what he recalls Dr. Kowall telling him cannot be offered for the truth of the matter asserted, i.e., that Defendant Laufik's findings were inaccurate. *See* Fed. R. Evid. 801(c). Furthermore, it cannot be said that the exception under Rule 803(4) (statement made for medical diagnosis or treatment) applies, particularly since the contemporaneous record shows that the MRI in question was not available for Dr. Kowall to review at that time and the progress notes do not indicate that Dr. Kowall made such a statement. There is also no indication that any of the other exceptions under Rule 803 applies, nor under Rules 804 (declarant available) and 807 (residual exception). It is therefore inadmissible under Rule 802.

With regard to Defendant's second objection to Plaintiff's opinion, it is sustained in so far as Plaintiff is clearly not qualified to offer expert testimony under Rule 702. On the other hand, it may be admissible as opinion testimony by a lay witness under Rule 701. However, Plaintiff's opinion on whether it is common knowledge that an MRI reveals more than an ultrasound is ultimately irrelevant on the issue of whether Defendant Laufik acted with professional negligence in reading Plaintiff's MRIs.

After a careful review of the evidence, the Court finds there are no genuine issues of material fact as to whether Defendant Laufik breached the standard of care with respect to his treatment of Plaintiff. Defendant has satisfied his initial burden of demonstrating the absence of a genuine issue of material fact with the expert opinion of Dr. Gaensler. Dr. Gaensler attests that he has been a licensed physician in the State of California since 1986, and has been in practice as a radiologist since being board certified in Diagnostic

24

1   Radiology by the American Board of Radiology in 1989.  Gaensler Decl. ¶ 1.  He is also

2   qualified in neuroradiology and interventional radiology since 1996.  *Id.*, Ex. A.  Dr.

3   Gaensler attests that he is familiar with the community standard of care applicable to the

4   practice of radiology and the particular radiological procedures and particular condition

5   involved in Plaintiff's case, *i.e.*, the MRI of the elbow and shoulder and distal biceps

6   tendon rupture.  *Id.* at ¶ 2.  Dr. Gaensler has reviewed the materials pertaining to the

7   involvement of Defendant Laufik in the medical care of Plaintiff, which includes the

8   following: the MRI images of Plaintiff's right shoulder taken on March 20, 2020, and

9   Defendant Laufik's report of those images; the MRI images of Plaintiff's right shoulder

10  taken on May 1, 2020, and Defendant Laufik's report of those images; and the records of

11  Dr. Kowall's consultation with Plaintiff on July 29, 2020.  *Id.* at ¶¶ 3, 4.

12      Dr. Gaensler found that the MRI images from March 20 and May 1, 2020, "contain

13  no indication that [Plaintiff] had suffered a right distal biceps tendon rupture."  Gaensler

14  Decl. ¶ 8.  Dr. Gaensler opines that the fact Dr. Kowall later diagnosed Plaintiff with right

15  distal biceps avulsion on July 29, 2020, does not mean Defendant Laufik was negligent in

16  his interpretation and reporting of Plaintiff's MRIs.  *Id.* at ¶ 9.  Dr. Gaensler opines that

17  Defendant Laufik met the standard of care in his interpretation and reporting of the MRI

18  studies of Plaintiff from March 20, 2020, and May 1, 2020.  *Id.* at ¶ 10.  He opines that

19  Defendant Laufik's reports of those studies "adequately reflect all clinically significant

20  abnormalities apparent in the images" as well as "accurately reflect that the images of the

21  studies contain no indication of distal biceps tendon rupture."  *Id.*  Dr. Gaensler concludes

22  that Defendant Laufik's interpretation of the MRIs and his reports "are consistent with the

23  care and skill ordinarily exercised by reputable and reasonably prudent radiologists

24  practicing in like cases and under similar circumstances."  *Id.*  Dr. Gaensler's testimony is

25  sufficient to show that there is no evidence to support Plaintiff's medical malpractice

26  claim.  *See Celotex Corp.*, 477 U.S. at 325.

27      The burden then shifts to Plaintiff to show that there is genuine issue for trial.  *Id.* at

28

United States District Court
Northern District of California

25

324.  He has failed to meet this burden.  Under California law, Plaintiff can only prevail against Defendant Laufik's summary judgment motion if he comes forward with conflicting expert testimony.  *Hanson*, 76 Cal.App.4th at 607.  He has not done so.  His allegation that Dr. Kowall disagreed with Defendant Laufik's findings is not sufficient to satisfy this requirement.  Even if the Court were to consider the hearsay opinion of Dr. Kowall on the presumption that Plaintiff could produce the witness at trial, the offered opinion remains inadmissible because there is no evidence that Dr. Kowall has the requisite expertise in radiology to render an expert opinion on MRI images to present a valid conflicting expert opinion.  Furthermore, even if he did, the undisputed evidence shows that Dr. Kowall never saw the MRI from March 20, 2020.  *See supra* at 21. Accordingly, Dr. Kowall was not in any position to express an informed disagreement with Defendant Laufik's interpretation of those images, if indeed he did express such a disagreement.  The Court notes that the medical records do not contain any such opinion by Dr. Kowall, as Plaintiff alleges.  But even if he had, such a disagreement was based purely on speculation that Plaintiff had no intervening change in his condition between March 20, 2020 and July 29, 2020.  Lastly, as Defendant asserts, a mere difference of opinion between health care providers is insufficient to establish medical malpractice.  *Id.*, citing *Clemens v. Regents of University of Cal.*, 8 Cal.App.3d 1, 13 (1970) (citing *Meier v. Ross General Hospital*, 69 Cal.2d 420, 434 (1968)).  Lastly, Plaintiff's lay opinion regarding ultrasounds and MRIs does not amount to expert testimony under Rule 702, and fails to satisfy his burden of producing conflicting expert testimony to overcome Defendant's summary judgment motion.

Based on the evidence presented, Defendant Laufik has demonstrated the absence of a genuine issue of material fact with respect to Plaintiff's medical malpractice claim against him.  *See Celotex Corp.*, 477 U.S. at 323.  In response, Plaintiff has failed to designate specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91

F.3d at 1279.  Because no reasonable fact finder could conclude that Defendant's conduct amounted to medical malpractice, Defendant Laufik is entitled to judgment on his claim. *See Celotex Corp.*, 477 U.S. at 323; *Hanson*, 76 Cal.App.4th at 607.

### E.   Deliberate Indifference – Eighth Amendment

Plaintiff generally alleges that Defendant Laufik's actions violated his rights and constitutes cruel and unusual punishment under the Eighth Amendment.  Dkt. No. 1 at ¶ 47.

Defendant asserts that this claim is invalid on its face because Plaintiff fails to satisfy the elements under *Farmer v. Brennan*, 511 U.S. 825, 837-838 (1994).  Dkt. No. 42 at 9.  Defendant also asserts that medical malpractice or negligence in diagnosing or treating a medical condition does not constitute deliberate indifference to serious medical needs.  *Id.*, citing *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).  Accordingly, even if Plaintiff's allegations of negligence were accepted as true, they would be insufficient to establish deliberate indifferent by Defendant Laufik.  *Id.*  Plaintiff's opposition is silent with respect to this Eighth Amendment claim against Defendant Laufik.  Dkt. No. 45. Defendant asserts in reply that he is therefore entitled to prevail on the motion as to this claim.  Dkt. No. 48 at 3.

A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  As discussed above, the Court has found there are no genuine disputes of material fact that Defendant Laufik was negligent with respect to his treatment of Plaintiff.  Other than his allegations that Defendant Laufik acted with negligence, the complaint contains no facts indicating that Defendant Laufik acted with deliberate indifference to Plaintiff's serious medical needs, *i.e.*, he knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. *Id.* at 837.  Rather, the undisputed evidence shows that

27

1   Defendant Laufik acted promptly in reviewing and issuing reports the same day that the

2   MRIs were taken on March 20, 2020, and May 1, 2020.  *See supra* at 20-21.  These MRIs

3   were the full extent of Defendant Laufik's involvement in Plaintiff's medical care.  The

4   undisputed evidence shows that he did not act with deliberate indifference in this regard.

5   Because no reasonable fact finder could conclude that Defendant's conduct amounted to

6   deliberate indifferent, Defendant Laufik is entitled to summary judgment on this claim.

7   *See Celotex Corp.*, 477 U.S. at 323.

8

9                                    **CONCLUSION**

10          For the foregoing reasons, the Court orders as follow:

11          1.       Defendant Dr. Mary K. Sweet's motion to dismiss the claim against her for

12   failure to state a claim is **GRANTED**.  Dkt. No. 13.  The Eighth Amendment claim against

13   Defendant Sweet is **DISMISSED with prejudice** for failure to state a claim under Rule

14   12(b)(6).

15          2.       In light of this dismissal, Defendant's motions to stay discovery and

16   Plaintiff's motion to resolve a discovery dispute are DENIED as moot.  Dkt. Nos. 30, 40.

17          3.       Plaintiff's motion for appointment of counsel and independent medical

18   expert is DENIED.  Dkt. No. 43.

19          4.       Defendant Laufik's motion for summary judgment is GRANTED.  Dkt. No.

20   42.  The medical malpractice and Eighth Amendment claims against him are D**ISMISSED**

21   **with prejudice.**  Defendant Laufik's motion to dismiss is **DENIED** as moot.  Dkt. No. 33.

22          This order terminates Docket Nos. 13, 30, 33 40, 42, and 43.

23          **IT IS SO ORDERED.**

24   **Dated:  ___January 4, 2023_____**

25                                                        BETH LABSON FREEMAN
                                                          United States District Judge
26

27   Order Granting MTD; Granting MSJ; Denying Mot. as Moot
     PRO-SE\BLF\CR.21\05833Bynum_grant-mtd&msj

28                                              28

*United States District Court*
*Northern District of California*